**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

STATE OF ALASKA,

                Plaintiff,

     v.

UNITED STATES OF AMERICA;
CHICKEN VENTURES, LLC, an Alaska
Limited Liability Company; GEORGE
W. SEUFFERT, SR.; GEORGE W.
SEUFFERT, JR.,

                Defendants.

Case No. 3:12-cv-00114-SLG

## ORDER RE ATTORNEY'S FEES

Before the Court at Docket 91 is the State of Alaska's Motion for Award of

Attorney's Fees and Determination of Prevailing Party for Purposes of Costs. The United

States responded at Docket 98, and the State of Alaska replied at Docket 99. The parties

jointly moved to bifurcate the issues as: (1) whether the United States is liable for fees,

expenses, and costs, and (2) whether the specific amounts claimed by the State of Alaska

are reasonable.[1] The Court granted the parties' request to bifurcate.[2] This order

addresses the first issue only; oral argument on that issue was held on October 22, 2015.[3]

---

[1] Docket 96 (Joint Mot.).

[2] Docket 97 (Bifurcation Order).

[3] Docket 97 (Bifurcation Order); Docket 102 (Minutes).

## FACTUAL AND PROCEDURAL BACKGROUND

The State filed this quiet title action on June 1, 2012 seeking to quiet title to the submerged lands of a portion of the Mosquito Fork of the Fortymile River.[4]  On June 1, 2015, the State moved for summary judgment.[5]  The parties fully briefed the summary judgment motion; oral argument on the motion was scheduled for July 28, 2015.[6]  A seven-day bench trial was scheduled to commence on August 17, 2015.[7]

The day before the scheduled oral argument, on July 27, 2015, the United States disclaimed its interest in the disputed portion of the Mosquito Fork.[8]  On July 28, 2015, the Court vacated the oral argument and the trial, and entered a Decree and Order confirming the disclaimer.[9]  The State now moves for attorney's fees and costs, based on its assertion that it is the prevailing party in this litigation and that the United States has acted in bad faith.[10]  The United States opposes.

---

[4] Docket 1 (Complaint) at 1, 16.

[5] Docket 65 (SJ Mot.).

[6] Docket 67 (SJ Opp'n); Docket 69 (SJ Reply); Docket 72 (Scheduling Order).

[7] Docket 47 (Order); Docket 86 (Order Vacating).

[8] Docket 80 (Disclaimer); Docket 84 (Order and Decree Confirming Quiet Title Act Disclaimer); Docket 86 (Order Vacating); Docket 72 (Scheduling Order).

[9] Docket 84 (Order and Decree Confirming Quiet Title Act Disclaimer); Docket 86 (Order Vacating).

[10] Docket 91 (Mot.).

3:12-cv-00114-SLG, *SOA v. USA, et. al*
Order re Attorney's Fees
Page 2 of 22

**DISCUSSION**

**I.  Jurisdiction**

When this action was filed, the Court had subject matter jurisdiction over the case pursuant to the Quiet Title Act, 28 U.S.C. § 2409a,[11] and the Declaratory Judgment Act, 28 U.S.C. § 2201.  The Court had supplemental jurisdiction over any pendent state law claims under 28 U.S.C. § 1367(a).  Once the Court confirmed the United States' disclaimer, the Court's jurisdiction to decide the merits of the parties' dispute ceased.[12]

The United States asserts that upon confirmation of the disclaimer, the Court lost jurisdiction over all aspects of the case, including the jurisdiction to award fees and costs. It asserts that after confirmation of the disclaimer, the United States would have needed to expressly waive its sovereign immunity again in order for the Court to have jurisdiction to award attorney's fees, which it has not done.[13]  The State responds that so long as the Court initially had jurisdiction, it retains the authority to award attorney's fees even after its subject matter jurisdiction ceased to issue a decision on the merits.[14]

"The [Equal Access to Justice Act (EAJA)] renders the United States liable for attorney's fees for which it would not otherwise be liable, and thus amounts to a partial

---

[11] 28 U.S.C. § 1346(f) ("The district courts shall have exclusive original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States.").

[12] *See* 28 U.S.C. § 2409a(e) ("If the United States disclaims all interest in the real property or interest therein adverse to the plaintiff at any time prior to the actual commencement of the trial, which disclaimer is confirmed by order of the court, the jurisdiction of the district court shall cease unless it has jurisdiction of the civil action or suit on ground other than and independent of the authority conferred by section 1346(f) of this title.").

[13] Docket 98 (Opp'n) 4–5.

[14] Docket 99 (Reply) 4–6.

3:12-cv-00114-SLG, *SOA v. USA, et. al*
Order re Attorney's Fees
Page 3 of 22

waiver of sovereign immunity."[15]   The EAJA provides that "[A] court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States . . . in any court having jurisdiction of such action."[16]  In *United States v. 87 Skyline Terrace*, the district court denied two property owners attorney's fees from the United States under the EAJA in a forfeiture proceeding after the case had been dismissed with prejudice for lack of subject matter jurisdiction.[17]  On appeal, the United States asserted that the district court lacked the authority to award any attorney's fees because the court's subject matter jurisdiction had ceased.  But the Ninth Circuit interpreted the phrase "in any court having jurisdiction" within the EAJA to authorize the district court to award fees after the case had been dismissed, reasoning that the district court had been the correct forum to resolve the forfeiture proceeding, and would have had subject matter jurisdiction but for a procedural oversight by the United States.[18]

The Court holds that in accordance with Ninth Circuit precedent on the issue, the Court may award attorney's fees under the EAJA at this time because it had subject matter jurisdiction to decide the merits of the quiet title proceeding until it confirmed the disclaimer of interest.

---

[15] *Ardestani v. I.N.S.*, 502 U.S. 129, 137 (1991).

[16] 28 U.S.C. § 2412(b).

[17] 26 F.3d 923, 927–28 (9th Cir. 1994).

[18] *Id.* at 928; s*ee also Reiser v. Del Monte Prop. Co.*, 605 F.2d 1135, 1140 (9th Cir. 1979) (allowing attorney's fees claim after case became moot).

3:12-cv-00114-SLG, *SOA v. USA, et. al*
Order re Attorney's Fees
Page 4 of 22

## II.    Prevailing Party Status

The United States next asserts that the State is not a prevailing party under 28 U.S.C. § 2412 because the United States' disclaimer was a "purely voluntary and self-executing" document.  The United States maintains that the Court's subsequent order confirming the disclaimer did not change the rights of the parties.[19]  Rather, the United States contends that the order "merely removed the jurisdiction of the Court over the State's claims."[20]  The State responds that the Court incorporated the United States' disclaimer into the July 28, 2015 order, thereby changing the rights of the parties.  And the State notes that the voluntary nature of the United States' disclaimer is of no consequence when the State received all of its requested relief on the merits through the judicially confirmed disclaimer.[21]

The prevailing party is the "party in whose favor a judgment is rendered, regardless of the amount of damages awarded."[22]  "This definition requires the party to have achieved 'a material alteration in the legal relationship of the parties' that is 'judicially sanctioned.'"[23]  And this alteration in a legal relationship may be due to a settlement agreement; it need not be involuntary or "include an admission of liability by the

---

[19] Docket 98 (Opp'n) at 5–9.

[20] Docket 98 (Opp'n) at 7.

[21] Docket 91 (Mot.) at 12–14; Docket 99 (Reply) at 2–4.

[22] *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1030 (9th Cir. 2009) (quoting *Citizens for Better Forestry v. U.S. Forest Serv.*, 567 F.3d 1128, 1131 (9th Cir. 2009)).

[23] *Id.* (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604–05 (2001); *Carbonell v. INS*, 429 F.3d 894, 898 (9th Cir. 2005)).

3:12-cv-00114-SLG, *SOA v. USA, et. al*
Order re Attorney's Fees
Page 5 of 22

defendant."[24]  Finally, "[t]he form in which the relief comes is less important than that it be the relief the plaintiff sued to get."[25]

There does not appear to be any real disagreement that the State received all of the relief that it had sought when it filed this lawsuit.  Instead, the parties disagree as to whether the relief was "judicially sanctioned."

The United States filed its disclaimer on July 27, 2015 and moved the Court for confirmation, stating that "[i]n light of the United States' disclaimer, and pursuant to 28 U.S.C. § 2409a(e), the Court should enter an order confirming that disclaimer."[26]  The relevant statutory language of 28 U.S.C. § 2409a(e) states, "If the United States disclaims all interest in the real property or interest therein adverse to the plaintiff at any time prior to the actual commencement of the trial, *which disclaimer is confirmed by order of the court*, the jurisdiction of the court shall cease."[27]  There is no guidance in the statutory language of the considerations a district court should entertain when deciding whether to confirm a disclaimer.

When filing the disclaimer, counsel for the United States represented that they had "conferred with counsel for Plaintiff regarding their position on this motion. Counsel for Plaintiff represented that they [would be filing] a response indicating the State of Alaska's

---

[24] *Buckhannon*, 532 U.S. at 604 ("[W]e have held that settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees.").

[25] *Klamath Siskiyou Wildlands Ctr.*, 589 F.3d at 1030.

[26] Docket 82 (Mot. to Confirm) at 2.

[27] 28 U.S.C. § 2409a(e) (emphasis added).

3:12-cv-00114-SLG, *SOA v. USA, et. al*
Order re Attorney's Fees
Page 6 of 22

non-opposition to this motion."[28]  The State then filed a notice of non-opposition to the disclaimer, but also stated that the "Court's role in confirming the disclaimer is not merely ministerial.  Having been fully briefed on summary judgment, the Court is in a position to determine that the United States' disclaimer is consistent with navigability jurisprudence and the evidence previously submitted."[29]  The Court confirmed the United States' disclaimer on July 28, 2015.  The Order and Decree Confirming Quiet Title Act Disclaimer simply stated: "It is hereby ORDERED that the said disclaimer by the United States of America is CONFIRMED."[30]

In *Lee v. United States*, a 1985 case from the District of Alaska, the district court in confirming a disclaimer found that "there is no question that [the] disclaimer is valid and was made in good faith," because "the United States' conveyance of the disputed homestead property was required under the terms of [the Alaska Native Claims Settlement Act]."[31]  The district court's finding is reflective that the action of confirming a disclaimer is not merely a ministerial task.  Likewise, in *W. H. Pugh Coal Co. v. United States*, a case from the Eastern District of Wisconsin, the court commented on the disclaimer before confirming it, and stated that "[i]f [the disclaimer] were a situation in which the state and federal authorities were attempting to whipsaw the plaintiff and to harass it so as to avoid a resolution of this dispute, I would be reluctant to grant the dismissal. However, notwithstanding the delays which have been encountered in this

---

[28] Docket 82 (Mot. to Confirm) at 2.

[29] Docket 83 (Non-Opp'n) (citing *Lee v. United States*, 629 F. Supp. 721, 726 (D. Alaska 1985)).

[30] Docket 84 (Order and Decree Confirming Quiet Title Act Disclaimer).

[31] *Lee*, 629 F. Supp. at 726.

3:12-cv-00114-SLG, *SOA v. USA, et. al*
Order re Attorney's Fees
Page 7 of 22

litigation, I am not persuaded that there has been bad faith on the part of counsel for either the United States or the state of Wisconsin."[32]  And yet, in *Lee* and *W. H. Pugh Coal*, the district courts' confirmation orders contained language that the court "must confirm the United States' disclaimer"[33] or that the confirmation was a "formality and one which this court should not deny."[34]  Nonetheless, these statements were predicated on each court's finding that no bad faith was present.  Only after the court found that the disclaimer was made in good faith did the process of confirmation became obligatory.

In this case, the confirmation order did not address whether the disclaimer was made in good faith, as no party asserted that it was not.  Yet the United States appears to have acknowledged the need for some review by the Court prior to confirmation, as it cited to both *Lee* and *W. H. Pugh Coal* in its motion for disclaimer in July 2015.[35]  Moreover, the statute expressly requires both a disclaimer and the judicial confirmation of that disclaimer to resolve disputed claims.  For these reasons, the Court rejects the view that the disclaimer is self-executing.  Rather, the Court's confirmation of the United States' voluntary disclaimer was a key step in the process of quieting title.  Accordingly, the Court finds that the State was a prevailing party in this matter.[36]

---

[32] 418 F. Supp. 538, 539 (E.D. Wis. 1976).

[33] *Lee*, 629 F. Supp. at 726.

[34] *W. H. Pugh Coal Co.*, 418 F. Supp. at 539.

[35] *See* Docket 82 (Mot. to Confirm) at 2.

[36] The Court notes that if it were to find that a plaintiff was not a prevailing party in these circumstances, then theoretically a defendant could repeatedly litigate in bad faith but escape any consequence by merely disclaiming its interest when defeat seemed imminent. *Cf. W. H. Pugh Coal Co.*, 418 F. Supp. at 539.

3:12-cv-00114-SLG, *SOA v. USA, et. al*
Order re Attorney's Fees
Page 8 of 22

### III. Bad Faith

The State seeks attorney's fees against the United States based on the State's assertion that the United States has acted in bad faith. Under the EAJA, "[T]he United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law."[37] Under federal law, "[t]he common law allows a court to assess attorney's fees against a losing party that has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"[38] The Ninth Circuit has held that the reference to the common law in the EAJA is a "clear indication" that a court should "hold the government to the same standard of good faith that we demand of all non-governmental parties."[39]

Ninth Circuit precedent instructs that "[a] finding of bad faith is warranted where an attorney 'knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.'"[40] "For sanctions to apply, if a filing is submitted recklessly it must be frivolous, while if it is not frivolous, it must be intended to

---

[37] 28 U.S.C. § 2412(b).

[38] *Rodriguez v. United States*, 542 F.3d 704, 709 (9th Cir. 2008) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)).

[39] *Id.*

[40] *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) (quoting *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996)). It appears that the Ninth Circuit does not require a heightened standard to find bad faith. *See Rodriguez*, 542 F.3d at 709 (reviewing bad faith finding for clear error); *but see Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 187 F.3d 655, 661 (D.C. Cir. 1999) (requiring clear and convincing evidence). However, even were this circuit to require the heightened standard of clear and convincing evidence, the Court's finding of bad faith would remain the same.

3:12-cv-00114-SLG, *SOA v. USA, et. al*
Order re Attorney's Fees
Page 9 of 22

harass."[41]  "Mere recklessness does not alone constitute bad faith; rather, an award of attorney's fees is justified when reckless conduct is 'combined with an additional factor such as frivolousness, harassment, or an improper purpose.'"[42]  A case is frivolous "when the government's position was foreclosed by binding precedent or so obviously wrong as to be frivolous."[43]

The State asserts that the United States acted in bad faith in this litigation for four primary reasons: (1) it refused to follow binding precedent from the Ninth Circuit and the United States Supreme Court; (2) it has had a long-standing policy "to oppress the State's title to its submerged lands . . . unless . . . the State files costly litigation to vindicate its rights"; (3) it disclaimed its interest to the submerged lands at issue at an unreasonably late stage of the litigation, because the relevant facts were known to both parties for some time before the disclaimer; and (4) it refused to stipulate that the river was in its original condition until after the deadline for expert rebuttal reports had passed.[44]  The United States responds by distinguishing the Supreme Court precedent and asserting that it only disagreed with the State's interpretation of Ninth Circuit precedent, not the precedent itself.[45]  And the United States asserts that its conduct as to other rivers is irrelevant, and that the timing of its stipulation and disclaimer cannot give rise to bad faith.

---

[41] *In re Keegan*, 78 F.3d at 436.

[42] *Rodriguez*, 542 F.3d at 709 (quoting *Fink v. Gomez*, 239 F.3d 989, 993–94 (9th Cir. 2001)).

[43] *United States v. Manchester Farming P'ship*, 315 F.3d 1176, 1183 (9th Cir. 2003) (quoting *United States v. Braunstein*, 281 F.3d 982, 995 (9th Cir. 2002)) (internal quotation marks omitted).

[44] Docket 91 (Mot.) at 7–8, 14–21; Docket 99 (Reply) at 6–15.

[45] Docket 98 (Opp'n) at 10–16.  The United States also asserts that this Court cannot decide whether it acted in bad faith without making a decision on the merits, which the Court no longer has jurisdiction to do.  *Id.* at 11–12.  But in deciding the issue of attorney's fees, the Court is not

3:12-cv-00114-SLG, *SOA v. USA, et. al*
Order re Attorney's Fees
Page 10 of 22

A.    Ninth Circuit and Supreme Court Precedent

Congress vested in the States "title to and ownership of the lands beneath navigable waters within the boundaries of the respective States."[46]  "If navigable, title to the submerged lands passed to Alaska at statehood, . . . [and] [i]f non-navigable, the lands remained federal."[47]  Thus, the dispositive issue in this case was whether the disputed portion of the Mosquito Fork was navigable at the time of Alaska's statehood in 1959.  Navigability is defined as follows:

> Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water.[48]

"Although the river must be navigable at the time of statehood, this only means that, at the time of statehood, regardless of the actual use of the river, the river must have been susceptible to use as a highway for commerce."[49]

The State asserts that the United States refused to follow the Ninth Circuit's decision in the *Gulkana* case, *State of Alaska v. Ahtna, Inc.*, a case that addressed a

---

entering judgment on the underlying claims.  Rather, the Court is evaluating the United States' litigation conduct in this case in making a determination as to whether that conduct amounted to bad faith.

[46] *State of Alaska v. Ahtna, Inc.*, 891 F.2d 1401, 1404 (9th Cir. 1989) ("*Gulkana*") (quoting 43 U.S.C. § 1311(a) (1982)).

[47] *Id.*

[48] *The Daniel Ball*, 77 U.S. (19 Wall.) 557, 563 (1870); *Gulkana*, 891 F.2d at 1404.

[49] *Gulkana*, 891 F.2d at 1404 (citation omitted).

3:12-cv-00114-SLG, *SOA v. USA, et. al*
Order re Attorney's Fees
Page 11 of 22

claim to quiet title to the Gulkana River.[50]  The State also asserts that the United States ignored United States Supreme Court precedent from *United States v. Utah*,[51] *Utah v. United States*,[52] and *PPL Montana, LLC v. Montana*[53]—cases that each held prior use need not be commercial to be relevant, because the standard is *susceptibility* for commercial use.  The State contends that despite the holdings of these cases, the United States repeatedly argued in this case that "personal use is not evidence of navigability in fact or of susceptibility for commercial use."[54]

The United States responds that navigability decisions are inherently fact-based. It appears to be implicitly arguing that it need not follow the clear pronouncements of law contained in the decisions of the Unites States Supreme Court and the Ninth Circuit because the facts in those cases were different, i.e., they addressed different bodies of water than what was at issue here.  It also asserts that *Gulkana* cannot bind the United States because no dispute existed between Alaska and the United States in that appeal. And the United States asserts that even in *Gulkana*, "evidence of purely personal boating use was insufficient to demonstrate susceptibility to commercial navigation."[55]

"A decision by [a circuit court], not overruled by the United States Supreme Court, is . . . binding on all inferior courts and litigants in the [circuit], and also on administrative

---

[50] 891 F.3d 1401 (1989) ("*Gulkana*").

[51] 283 U.S. 64 (1931).

[52] 403 U.S. 9 (1971).

[53] 132 S. Ct. 1215 (2012).

[54] Docket 91 (Mot.) at 17 (quoting Docket 67 (USA SJ Opp'n, 6/25/15) at 26–27).

[55] Docket 98 (Opp'n) at 13, 15.

3:12-cv-00114-SLG, *SOA v. USA, et. al*
Order re Attorney's Fees
Page 12 of 22

agencies when they deal with matters pertaining thereto."[56]  "Administrative agencies are not free to refuse to follow circuit precedent in cases originating within the circuit, unless the [agency] has a good faith intention of seeking review of the particular proceeding by the Supreme Court."[57]  As the Ninth Circuit observed in a case involving the Bureau of Prisons, the "Bureau could not go on construing the phrase 'nonviolent offense' in a manner contrary to our prior rulings."[58]  Thus, the Court begins its analysis from the premise that throughout the course of this litigation, the United States (as well as the State) was bound by the decisions of both the United States Supreme Court and the Ninth Circuit in crafting its arguments.

In the *Gulkana* case, the parties—the State of Alaska, Ahtna, Inc., Sta-Keh Corp., the United States, the Secretary of the Interior, and the Alaska State Director of the Bureau of Land Management—all agreed that in the years preceding Alaska statehood, hunters and fishermen traveled the Gulkana river.[59]  It was also undisputed that from the 1970's onward it was possible to take guided fishing and sightseeing trips on the disputed portion of the river using vessels that were similar to those stipulated to have been used at statehood.[60]  The parties also stipulated that the current physical characteristics of the river were the same as at statehood.[61]  The district court concluded that the river was

---

[56] *Allegheny General Hospital v. NLRB*, 608 F.2d 965, 970 (3d Cir. 1979).

[57] *NLRB v. Ashkenazy Prop. Mgmt. Corp.*, 817 F.2d 74, 75 (9th Cir. 1987).

[58] *Bowen v. Hood*, 202 F.3d 1211, 1219 (9th Cir. 2000).

[59] *State of Alaska v. Ahtna, Inc.*, 891 F.2d 1401, 1403 (9th Cir. 1989) (*Gulkana*).

[60] *Id.*

[61] *Id.* at 1402.

3:12-cv-00114-SLG, *SOA v. USA, et. al*
Order re Attorney's Fees
Page 13 of 22

"capable of transporting people and goods," and found that the disputed portions of the river were navigable.[62]

In a decision on December 13, 1989, long before the instant litigation was commenced, the Ninth Circuit affirmed on appeal. It noted Ahtna's argument that "the principle uses of the Gulkana have always been recreational, and that recreational uses do not support a finding of navigability," but expressly held that this argument was "unpersuasive."[63] The Ninth Circuit held that "[t]he test is whether the river was susceptible of being used as a highway for commerce at statehood, not whether it was actually so used."[64] The Circuit Court held that "[t]o deny that this use of the River is commercial because it relates to the recreation industry is to employ too narrow a view of commercial activity."[65] The court also held that the current commercial activity in guiding and sightseeing on the river was "conclusive evidence" of the river's susceptibility to commercial use at statehood, because "the watercraft customary at statehood could have at least supported commercial activity of the type carried on today, with minor modifications."[66] Further, the court held that "[i]t is not essential that the river be used for the transportation of water-borne freight by a carrier whose purpose is to make money

---

[62] *State of Alaska v. United States*, 662 F. Supp. 455, 466 (D. Alaska 1987).

[63] *Gulkana*, 891 F.2d at 1405.

[64] *Id.*; *cf. United States v. Utah*, 283 U.S. 64, 82 (1931) ("The question of that susceptibility in the ordinary condition of the rivers, rather than of the mere manner or extent of actual use, is the crucial question.").

[65] *Gulkana*, 891 F.2d at 1405.

[66] *Id.*

3:12-cv-00114-SLG, *SOA v. USA, et. al*
Order re Attorney's Fees
Page 14 of 22

from the transportation."[67]  This Court reads *Gulkana* as quite clearly holding that to determine navigability a court must look at all the facts—including past and present private use—to determine susceptibility to being used as a highway for commerce at statehood.

In *United States v. Utah*, a 1931 decision from the Supreme Court, the government had argued "that the uses of the rivers ha[d] been more of a private nature than of a public, commercial sort."  But the Supreme Court held that this fact "cannot be regarded as controlling when the rivers are shown to be capable of commercial use."[68]  "[T]he capability of use by the public for purposes of transportation and commerce affords the true criterion of the navigability of a river, rather than the extent and manner of that use."[69]  In 1971, the Supreme Court expanded on its holding with its decision in *Utah v. United States*.[70]  There, the Court noted that at statehood, owners of livestock had used boats to haul their own cows and sheep to and from an island in the Great Salt Lake; the boats were not used as "a carrier for the purpose of making money."[71]  The United States had argued that such use could not be commerce because "the business of the boats was ranching and not carrying water-borne freight."[72]  But the Court held that this was "an irrelevant detail. The lake was used as a highway and that is the gist of the federal test"

---

[67] *Id.* at 1404.

[68] 283 U.S. 64, 82 (1931).

[69] *Id.* (quoting *The Montello*, 87 U.S. 430, 441 (1874)).

[70] 403 U.S. 9 (1971).

[71] *Id.* at 11.

[72] *Id.*

3:12-cv-00114-SLG, *SOA v. USA, et. al*
Order re Attorney's Fees
Page 15 of 22

of navigability.[73] Finally, in *PPL Montana, LLC v. Montana*, the Supreme Court held that "evidence of recreational use, depending on its nature, may bear upon susceptibility of commercial use at the time of statehood."[74]

With this binding precedent in mind, the Court turns to some arguments made by the United States and its counsel with respect to the Mosquito Fork: [75]

- "[P]ersonal use is not evidence of navigability in fact or of susceptibility for commercial use. The United States does not dispute that riverboats, launches, scows, airboats, and canoes were available in the area at the time of statehood, but disputes that they were used for commercial purposes. Their use was primarily for personal subsistence activities, such as hunting and fishing, rather than for commercial use."[76]

- "Q: Would it be commercial use if you're just transporting travelers and they don't have any goods? A. Not under the definition that I'm using. Q: What definition are you using? A: Freighting."[77]

- "A significant part of the State's arguments rely on the decision in [*Gulkana*] . . . regarding the navigability of the Gulkana River. This case does not establish principles binding on the United States in this action."[78]

---

[73] *Id.*

[74] 132 S. Ct. 1215, 1233 (2012).

[75] To the extent the United States may be asserting that it can disregard binding precedent of the United States Supreme Court or the Ninth Circuit establishing standards for navigability, as set forth in the opinions issued by those courts, because those decisions involved different water courses, that assertion is without merit. As the Supreme Court observed in *Utah v. United States*, 403 U.S. at 10–11, "the test of navigability of waters . . . applies to all water courses."

[76] Docket 67 (USA SJ Opp'n, 6/25/15) at 26–27.

[77] Docket 65-17 (Michael Brown Depo., 4/1/2015) at 46 (Mr. Brown, one of Defendant's experts, being questioned by counsel for the State in this case).

[78] Docket 67 (USA SJ Opp'n, 6/25/2015) at 8–9.

3:12-cv-00114-SLG, *SOA v. USA, et. al*
Order re Attorney's Fees
Page 16 of 22

- "While it is natural, and even appropriate, for an agency to consider the *Gulkana* decisions, [the agency] was certainly not required to adopt and mechanically apply those decisions. . . . Moreover, as explained by Mr. Mike Brown[, a historian for the Bureau of Land Management and expert witness for the United States in this case], the *Gulkana* decisions were never adopted by [the Bureau of Land Management], and the agency continued to apply the commercial use standard of navigability, as it understood it."[79]

- "The [Fortymile Mining Association]'s position on navigability appears to generally align with the State's view which liberally applies the 9th Circuit Court's Gulkana River decision to the Fortymile. The Department of Interior Regional Solicitor has advised the BLM that this decision applies only to the Gulkana River and the decision may not be used to determine navigability for other Alaskan rivers."[80]

Counsel for the United States now asserts that its litigation position in this case was actually that private use could not be considered because "jet boats and modern inflatable boats were not common at the time of statehood."[81] But the statements of the United States and its counsel, laid out above, demonstrate that counsel was more clearly asserting that only "freighting" or commercial use could be considered as a matter of law.[82] This position is at odds with both Ninth Circuit and United States Supreme Court precedent, which expressly directs consideration of non-commercial use in determining

---

[79] Docket 67 (USA SJ Opp'n, 6/25/2015) at 10.

[80] Docket 91-2 (Letter to Sen. Murkowski, 2007, from the State Director of the BLM).

[81] Docket 98 (Opp'n) at 14.

[82] The Court also points out the difficulty in the United States' assertion that current activity cannot be considered because jet boats and modern inflatable boats were not used at statehood. Such an argument is directly contrary to binding Supreme Court precedent. The test in that regard, as stated by the Supreme Court, is whether the vessels were "meaningfully similar." *PPL Montana*, 132 S. Ct. at 1233. Thus, the test focuses on the capabilities and draft of the vessels, not the type or technology.

3:12-cv-00114-SLG, *SOA v. USA, et. al*
Order re Attorney's Fees
Page 17 of 22

navigability. The Court finds that counsel's refusal to follow binding precedent that private use may be relevant and its position that Ninth Circuit precedent did not bind it unless expressly "adopted" by BLM was frivolous.[83] And the Court finds that these frivolous arguments were at least recklessly, if not knowingly, raised.[84] The Court is expressing no opinion on the merits of the underlying case, including whether the State's showing of private use would have carried the day, but the United States' refusal to follow Supreme Court and Ninth Circuit precedent greatly increased the length of this case and its burden on the State.

Accordingly, the Court finds that when the United States asserted that it need not follow binding precedent in this litigation and that private use of the Mosquito Fork could not be considered by the Court in determining navigability, it acted in bad faith.

B. The United States' Alleged Policies Regarding Other Disputed Submerged Lands

The State asserts that the United States' prior conduct with respect to other rivers in Alaska further demonstrates its bad faith. The State asks the Court to consider the United States' approach, generally, to rivers in Alaska, which it alleges constitutes "a longstanding effort to deprive the State of its sovereign territory."[85] In response, the

---

[83] See United States v. Manchester Farming P'ship, 315 F.3d 1176, 1183 (9th Cir. 2003) (holding that position is frivolous when "foreclosed by binding precedent").

[84] Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 649 (9th Cir. 1997) ("A finding of bad faith is warranted where an attorney 'knowingly or recklessly raises a frivolous argument . . . .'") (quoting In re Keegan Mgmt. Co., Sec. Litig., 78 F.3d 431, 436 (9th Cir. 1996)).

[85] Docket 91 (Mot.) at 18–20.

3:12-cv-00114-SLG, *SOA v. USA, et. al*
Order re Attorney's Fees
Page 18 of 22

United States asserts that it would be error for the Court to consider the United States' conduct with regard to other rivers in Alaska that were not part of this quiet title action.[86]

The Court concurs with the United States that any fee award in this case should not be based on the United States' alleged conduct with regard to other rivers, or based on BLM's alleged internal discussions regarding the application of the *Gulkana* standard, but should be based solely on the government's conduct with respect to the Mosquito Fork and the current litigation.

C.    The Timing of the Disclaimer

The State asserts that the timing of the Unites States' disclaimer of its interest—three years after the filing of the complaint, the day before oral argument, and three weeks before trial—evidences bad faith.  It argues that the timing was unreasonable given that the facts were not generally contested by the parties and had been known for considerable time.[87]  The United States responds that the Quiet Title Act authorizes a disclaimer at "any time prior to the actual commencement of the trial."[88] And it asserts that the timing of its disclaimer was reasonable given the disputes of material fact and law.[89]

The Court finds that the disclaimer was, indeed, very poorly timed—requiring the Court and the State to prepare fully for a summary judgment argument that never

---

[86] Docket 98 (Opp'n) at 16–17.

[87] Docket 91 (Mot.) at 20–21.

[88] Docket 98 (Opp'n) at 20 (quoting 28 U.S.C. § 2409a(e)).

[89] Docket 98 (Opp'n) at 19–23.

3:12-cv-00114-SLG, *SOA v. USA, et. al*
Order re Attorney's Fees
Page 19 of 22

occurred—but the Court finds that the timing alone does not constitute bad faith.[90]  The United States was statutorily empowered to disclaim its interest "at any time."  A finding that the belated timing of a disclaimer could itself constitute bad faith could unnecessarily chill the resolution of quiet title disputes shortly before trial.[91]  Accordingly, the Court finds that the United States did not act in bad faith by disclaiming its interest in the disputed portion of the river on July 27, 2015.

### D. The State's Request for Admission that the River was in its Original Condition

In May 2013, the State asked the United States to admit that the river was in its "natural and original condition."[92]  The United States denied this admission.  On January 15, 2015, the State received the United States' expert's report, which opined that the river had not changed in any material way since statehood.  That same day the State inquired whether the United States planned to continue to contest that the river was in its natural and ordinary condition, or whether the United States would stipulate to this fact.  The United States responded that a stipulation "sound[ed] reasonable," but made no concrete concession.  The State did not hear back from the United States before the deadline for rebuttal expert reports, which was January 30, 2015.[93]

---

[90] *See SmartData, S.A. v. Amazon.com, Inc.*, No. 15-CV-01282-SI, 2015 WL 6955000, at *2 (N.D. Cal. Nov. 10, 2015) ("[T]he poorly timed dismissal does not necessarily support a finding of bad faith.").

[91] Nonetheless, the timing of the disclaimer has a clear impact on the amount of a fee award.

[92] Docket 91-7 (Req. for Admission) at 3.

[93] Docket 92 (Alloway Decl.) at 3–4.

3:12-cv-00114-SLG, *SOA v. USA, et. al*
Order re Attorney's Fees
Page 20 of 22

The State maintains that the United States acted in bad faith when it delayed admitting that the disputed portion of the river was in its "original condition" because: (1) the river is a designated wild and scenic river; (2) a 1983 navigability determination found that the entirety of the Fortymile basin was in its natural condition; (3) counsel for the United States opined that such a concession "sound[ed] reasonable" but failed to act until after rebuttal expert reports were due; and (4) the United States' own expert concluded that the river was in its original condition.[94]  The United States responds that its decision not to admit this point was not made in bad faith.  It asserts that it needed to consult a hydrologist, and states that the hydrologist noted "artificial changes to the disputed reach of the Mosquito Fork due to dredge mining and construction of the Taylor Highway Bridge."[95]  However, the United States' hydrologist's report was completed before the deadline for rebuttal reports, so the United States could have made the admission before the State was required to submit its rebuttal reports.  Instead, the United States waited until after the rebuttal report deadline, requiring the State to obtain a rebuttal report on the topic.

The Court finds that, given the facts laid out in the State's briefing, the United States acted in bad faith by refusing to admit that the river was in its original condition until February 12, 2015, after rebuttal expert reports were due.[96]  The conclusion of the United States' expert that the disputed portion of the river had "not changed in a manner

---

[94] Docket 91 (Mot.) at 7–9.

[95] Docket 98 (Opp'n) at 24.

[96] *See* Docket 91 (Mot.) at 8–9.

3:12-cv-00114-SLG, *SOA v. USA, et. al*
Order re Attorney's Fees
Page 21 of 22

that would affect its navigability since January 1959 when Alaska became a State,"[97] together with the river's designation as wild and scenic, establishes that the river was in its original condition. While the United States was not required to concede this point "immediately,"[98] it unreasonably delayed its concession given the overwhelming evidence and the opinion of its own expert. This delay required the State to expend time and resources on unnecessary rebuttal expert reports.

Accordingly, the Court finds that the timing of the United States' stipulation that the river was in its original condition evidences bad faith in so far as it required the State to procure rebuttal reports on that topic.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that the State of Alaska's Motion for Award of Attorney's Fees and Determination of Prevailing Party for Purposes of Costs at Docket 91 is GRANTED. The State is directed to file a supplemental motion within 14 days of the date of this order that supplements as warranted its motion as to the amount of the fee award sought, to which the United States may respond within 14 days thereafter, and to which the State may file a reply, if any, within 7 days thereafter.[99]

DATED this 3rd day of May, 2016.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[97] Docket 91 (Mot.) at 8.

[98] *See* Docket 98 (Opp'n) at 24.

[99] The parties' briefing may address the time frame for which an award of fees is reasonable, i.e., for the entire course of the litigation or for only a certain time frame. *Cf. United States v. 87 Skyline Terrace*, 26 F.3d 923, 928 (9th Cir. 1994) (determining that fees should accrue only for the first two months under Rule 11 because at that point the parties should have discovered the lack of jurisdiction); *Lipsig v. Nat'l Student Mktg. Corp.*, 663 F.2d 178, 182 (D.C. Cir. 1980) ("[A]wards must be limited, however, to payment for work and expense attributable to bad-faith endeavors.").

3:12-cv-00114-SLG, *SOA v. USA, et. al*
Order re Attorney's Fees
Page 22 of 22